ARTHUR D. FRANCIS, Respondent, v. QUINCY, OHAMA & KANSAS CITY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, May 7, 1906.

1. RAILROADS: Killing Stock: Farm Crossing: Open Gate: Notice. A gate in a railroad fence at a farm crossing was closed and fastened at noon. At five o'clock it was observed by a neighbor to be open. The animal escaped through it in the night and was killed by a train. *Held,* without evidence that the railroad's servants knew of the open gate it cannot be held that the time before the killing was long enough to imply notice.

2. ———: ———: Gate Fastenings: Acquiescence. The construction of a gate in a railroad fence at a farm crossing is for the use of the property owner and his interest and convenience is primarily to be consulted. If he is satisfied with fastenings different from those prescribed in the statute no blame can attach to the company, especially so where use and acquiescence is inferable from want of complaint.

3. ———: Gates: Fields: Highway. Where a railroad fence separates fields the case is entirely different from a fence separating a railway from a highway. In the first instance the farm owner is alone interested. In the latter instance his acceptance of another than a statutory gate would not bind the public.

Appeal from Sullivan Circuit Court.—*Hon. John P. Butler,* Judge.

REVERSED.

*J. G. Trimble* and *Wilson & Clapp* for appellant.

(1)  There was no liability on the part of the defendant. The gate need not be a statutory gate, if it was securely fastened. There was no actual notice to the company that the gate was open, neither had a reasonable time elapsed. Railroad v. Kavanaugh, 163 Mo. 54; Harrington v. Railroad, 71 Mo. 384.

*Wattenbarger & Bingham* for respondent.

"Any railroad corporation running or operating any railroad in this State, shall erect and maintain lawful fences . . . with openings and gates therein, to be hung and have latches or hooks, so that they may be easily opened and shut at all necessary farm crossings of the road." R. S. 1899, sec. 1105; Bumpas v. Railway, 103 Mo. App. 207.  (2)  Gates are a part of the fence and it is defendant's statutory duty to keep them in proper repair and provide a way to keep them safely and securely closed. West v. Railroad, 26 Mo. App. 344; Woods v. Railroad, 51 Mo. App. 500; Hamilton v. Railroad, 87 Mo. 89; Turner v. Railroad, 51 Mo. 500; Duncan v. Railroad, 91 Mo. App. 70.  (3)  In the case at bar the gate never was provided with any fastening, so the doctrine of notice has no application. Such a rule cannot be invoked where a gate never had such a fastening as the law requires. Hill v. Railroad, 66 Mo. App. 184. (4)  No notice of any kind was necessary in this case. McMillan v. Railroad, 70 Mo. App. 568; Morrison v. Railroad, 79 Mo. App. 367; Miller v. Railroad, 56 Mo. App. 77.  (5) A barbed wire twenty years old fastened around the gate frame, tie and post would not be such a fasten-

ing as the law would recognize.   Binicker v. Railroad, 83 Mo. 660.

ELLISON, J.—Plaintiff brought this action for damages occasioned him by the loss of his horse killed by one of defendant's trains.   He recovered judgment in the trial court.

The ground of plaintiff's action is that defendant maintained an insufficient gate at a farm crossing over its track where it passes through plaintiff's fields; and that, in consequence, the horse passed from his field through the gate on to the right of way and was killed by a passing train.   Since the verdict was for the plaintiff, we must assume to be true what the evidence tends to show, as well as all reasonable inferences to be drawn therefrom.   An examination of the evidence has satisfied us that plaintiff was entitled to take the conclusion of the jury as to the animal getting in upon the right of way through the gate at the crossing.

But notwithstanding this, it appears that plaintiff has no legal ground for his action under the facts as they are shown to relate to the gate.   The gate was hung on hinges.   It was too short by from ten to sixteen inches, to reach over the space left in the fence as a gateway. The insufficient length of the gate was remedied by setting in a railroad tie or post, against what otherwise would have been the gate post.   The gate was fastened by means of a wire placed over the top of the tie and the end of the gate.   The plaintiff at some time prior to the time his mare was killed had concluded the wire then used was not sufficient and he, himself, put on a new one which he stated was well put on.   The gate was seen by plaintiff to be closed at noon preceding the night in question; but at about five o'clock a neighbor noticed that it was open.   He thought he would shut it but forgot it. Sometime in the night the mare passed through.   There is no pretense of any evidence that the defendant's servants knew that the gate was open and, of course, it can-

not be said that being seen open at five o'clock was long enough before the killing that night, for the law to imply notice to the defendant that it was open.

The question then comes to the sufficiency of the gate under the statute as it has been expressly construed by the Supreme Court. The statute (section 1105, Revised Statutes 1899), requires that the gate shall not only be hung on hinges, but that it must have latches or hooks so as to be easily opened and shut. The Supreme Court has, however, decided that the construction of the gate is principally for the use of the property owner, whose interests, and convenience, are primarily to be consulted, and that if he is satisfied with a gate with different fastening, no blame can be attached to the railway by him. This case shows use and acquiescence in this fastening by plaintiff as owner, and no complaint about it nor request for any thing different. Indeed, the plaintiff testified that he put on this fastening himself. There is no way in which this case can be fairly distinguished from those referred to as decided by the Supreme Court, which, of course, we must follow. [Harrington v. Railway, 71 Mo. 384; Railroad v. Kavanaugh, 163 Mo. 54.] It is more than probable that the case of Bumpas v. Railway, 103 Mo. App. 202, controlled the disposition of this case in the trial court. But it will be seen that the gate in that case was in the fence, not separating two fields inside a farm, but was in a fence along the public highway. And that it had no fastening at all and stood open. It is therfore unlike this case.

2. We understand the decisions of the Supreme Court, just cited, to refer to a gate at a crossing separating two fields, and not where it may be a part of a fence separating the railway from the highway, or commons. For, in the latter instance, the owner of the farm is not alone interested, and his acceptance of a non-statutory gate would not bind the public who are, in such case, as much concerned as he.

The judgment is reversed. All concur.